IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| JEFFREY ELMORE, <br> ADC #091418, | * <br> * <br> * | |
| Plaintiff, | * | |
| v. | * | No. 4:24-cv-00162-JJV |
| | * | |
| THOMAS HURST <br> Warden, Grimes Unit, ADC, *et al*. | * <br> * <br> * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

**I.     INTRODUCTION**

Jeffrey Elmore ("Plaintiff") is a prisoner in the Cummins Unit of the Arkansas Division of Correction ("ADC") who has filed this *pro se* action seeking relief pursuant to 42 U.S.C. § 1983. Plaintiff's remaining claim is that, on October 28, 2023, Sergeants John Burcham and Jacob Redman used excessive force against him while he was a prisoner in the Grimes Unit.   (Doc. 2.) All other claims and Defendants have been previously dismissed without prejudice.   (Doc. 9.) And the parties have consented to proceed before me.   (Doc. 19.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to dismissal because Plaintiff failed to properly exhaust his administrative remedies.   (Docs. 22-24.) Plaintiff has not filed a Response, and the time to do so has passed.   *See* Local Rule 7.2(b) (a response to a motion is due fourteen days after service).   Thus, the facts in Defendants' Statement of Undisputed Material Facts (Doc. 24) are deemed admitted.   *See* Local Rule 56.1(c); *Jackson v. Ark. Dept. of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001).   And, as will be discussed herein, those facts are supported by the record.   After careful review and consideration, the Motion is GRANTED, and Plaintiff's excessive force claim against Defendants

1

Burcham and Redman is DISMISSED without prejudice for the following reasons.

## II.   SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III.   EXHAUSTION

### A.   The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."

*Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*

However, the PLRA only requires prisoners to exhaust "available" administrative remedies. 42 U.S.C. § 1997e(a). Administrative remedies are "unavailable" if, for instance: (1) the grievance procedure "operates as a dead end;" (2) the procedure is "so opaque that it becomes . . . incapable of use;" or (2) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 642 (2016); *see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

**B.    ADC's Grievance Policy**

The ADC grievance policy in effect at the time of the alleged constitutional violation was Administrative Directive 19-34 ("AD 19-34"), which establishes a three-step procedure. (Doc. 22-1.) First, the inmate must attempt informal resolution by submitting a form to a designated problem solver within fifteen days of the incident. (Doc. 22-2.) The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id.* at § IV(E)(2).) And the problem solver must respond to the informal resolution

3

within three working days.[1]   (*Id*. § IV(E)(4) to (12).)

Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance within three working days by completing a different section on same form.   (*Id*. § IV(E)(11) and (F)(1).)   The Warden must provide a written response within twenty working days.   (*Id*. § IV(F)(5) and (7).)

Third, an inmate who is dissatisfied with the grievance response, or who does not timely receive a response, must appeal within five working days to the appropriate ADC Deputy Director. (*Id*. § IV(F)(9) and (G)(6).)   And that response ends the grievance process.   (*Id*.)

### C.   Grievance GR-23-1402

The Inmate Grievance Appeal Coordinator says in her sworn affidavit that GR-23-1402 is the only grievance Plaintiff filed about the claim raised in this lawsuit.  (Doc. 22-1.)   And Plaintiff has not filed any contrary evidence.

In GR-23-1402, Plaintiff said Sergeants Burcham and Redman used excessive force against him on October 28, 2023.  (Doc. 22-4 at 1.)  On November 15, 2023, the Warden denied that grievance, and Plaintiff signed his appeal the following day, on November 16, 2023.  (*Id*. at 2.) The ADC Deputy Director's office rejected the appeal, without reaching the merits, because it was untimely received on December 4, 2023.   (*Id*. at 3.)

AD 19-34 § IV(G) says an appeal must be "filed within the five (5) working days from the date of the response." (Doc. 22-2 at 12.)   The policy does not explain whether "filed" means the day the prisoner signed the appeal, the day it was put in the prison mail, or the day it was received by the ADC Deputy Director's office.   In *Prowse v. Washington,* 9 F.4th 836, 839 (8th Cir. 2021),

---

[1] AD 19-34 § III(E) defines "working days" as "Monday through Friday, excluding state observed holidays." (Doc. 22-2 at 2.)

the Eighth Circuit held that under the ADC's grievance procedure it is the "order of submission, not receipt" that determines when an appeal is filed.

Plaintiff had until November 22, 2023, which was five working days after the Warden's November 15, 2023 decision, to submit his appeal. It is undisputed Plaintiff signed his appeal on November 16, 2023. But there is nothing in the record to indicate he submitted it before the November 22, 2023 deadline. To the contrary, Plaintiff's grievance history form, the date stamps on the appeal and rejection notice, and the content of the Appeal Rejection Notice all say the appeal was not received until December 4, 2023. (Docs. 22-3, 22-4.) This evidence suggests that, even allowing three to four days for mailing, it was likely Plaintiff did not submit his appeal until after the November 22, 2023 deadline. Importantly, Plaintiff has not presented any evidence or argued that his appeal was timely submitted but its delivery delayed for reasons beyond his control. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) ("When the movant makes a *prima facie* showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact"). Based on the admitted facts and undisputed evidence in the record, I conclude Plaintiff did not timely exhaust his available administrative remedies. *See Woodford,* 548 U.S. at 90 (2006) (proper exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Consequently, Defendants are entitled to summary judgment. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process. The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV.    CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. 22) is GRANTED.

2. Plaintiff's excessive force claim against Defendants Burcham and Redman is DISMISSED without prejudice.

3. It is certified, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum and Order would not be taken in good faith.

DATED this 8th day of August 2024.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE